IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DORADELIA G., ) | |
| ) | No. 25 C 1479 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Doradelia G. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

### Background

On December 1, 2021, plaintiff applied for benefits, alleging a disability onset date of November 18, 2021. (R. 91.) Her application was denied initially, on reconsideration, and after a hearing. (R. 20-34, 91-111.) Plaintiff appealed to the Appeals Council, which declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 18, 2021, the alleged onset date. (R. 22.) At step two, the ALJ found that plaintiff has the severe impairments of history of cervical spine fusion at C5-6, morbid obesity, asthma, anxiety, and depression. (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (R. 23.) At step four, the ALJ found that plaintiff cannot perform any past relevant work but has the RFC to perform work that exists in significant numbers in the national economy, and thus she is not disabled. (R. 25, 31-34.)

Plaintiff argues that the ALJ failed to obtain a valid waiver of representation from her. Plaintiff can waive her statutory right to counsel, if first the ALJ apprises her of ""(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency

2

arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees.'"" *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994)). "[S]o long as it contains the required information, written notice adequately apprises a claimant of his right to counsel." *Id.* at 497.

The record shows that the ALJ explained plaintiff's right to representation at the hearing, and the Commissioner sent her two written notices about it that contain the information required by the Seventh Circuit. (*See* R. 44-45, 144-48, 166-67.) Plaintiff does not dispute that the written notices contain the necessary information, but she contends that they are still insufficient because there is "no indication that she had seen, read, or understood those notices." (ECF 11 at 8.) But plaintiff does not assert that she did not, in fact, see, read, or understand the notices, just that the record does not document that she did so. (*Id.*) Further, she does not cite a case that states waiver is not valid if the information is given to the claimant, but the record does not contain her acknowledgement of that fact. Thus, the Court finds that plaintiff was adequately apprised of her right to representation.

Plaintiff also takes issue with the ALJ's RFC, which states:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except, she can lift/carry 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours, stand for 2 hours, and walk for 2 hours; push/pull as much as lift/carry; occasionally reach overhead bilaterally, and frequently bilaterally for all other reaching; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, and crouch; never crawl; never work at unprotected heights and never with moving, mechanical parts; and never operate a motor vehicle. She can understand, remember, and carry out simple to detailed but not complex tasks; is able to follow simple and detailed but not complex work-related decisions; and can frequently interact with supervisors, coworkers, and the public.

(R. 25.)

Plaintiff contends that the RFC fails to account for how the combination of her emotional and physical impairments "impact her ability to remain on task sufficiently to sustain non-exertional [full-time] work-related activities." (ECF 11 at 11.)

The RFC is based in part on the ALJ's assessment of plaintiff's mental functioning. With respect to plaintiff's ability to concentrate, persist, and maintain pace, the ALJ found that plaintiff "has no more than a moderate limitation." (R. 24.) The ALJ acknowledged plaintiff's "allegations of anxiety with panic attacks," but he said, "[t]he evidence in the file shows claimant's mental health generally remains stable and under good control with conservative treatment." (*Id.*) The ALJ also said that plaintiff is:

> [A]ble to maintain sufficient focus in the completion of tasks. There were no difficulties evidenced during the hearing, and no indication of such difficulties anywhere in the record to justify a greater degree of restriction in this area. I note that her exams, in general, are negative for any excessive distractibility. Further, they have not revealed inadequate judgement or insight, or abnormal attention and concentration. Moreover, claimant has not had any frequent emergency room visits or inpatient hospitalizations during the period at issue.

(*Id.*)

Plaintiff says the ALJ's assessment is flawed because: (1) he said, incorrectly, that the record did not show that plaintiff took psychotropic medication until 2023, when there are medical records indicating earlier usage; (2) though plaintiff's symptoms "waxed and waned, that does not mean Plaintiff would be able to function on a regular and daily basis without impact from those symptoms;" and (3) "[i]t is inconceivable that Plaintiff would be capable of performing even the simplest tasks, with even minimal interactions, five days per week, eight hours a day." (ECF 11 at 12-13.)

The ALJ was indeed mistaken when he said plaintiff first took mental health medication in 2023, as the record contains medical records that state plaintiff was taking Alprazolam in

4

December 2020, December 2022, and December 2023. (*See* R. 522, 2244, 2502.)[1] The ALJ's mistake as to the duration of plaintiff's use of Alprazolam does not, however, impugn his conclusion that plaintiff can:

> [M]aintain sufficient focus in the completion of tasks. There were no difficulties evidenced during the hearing, and no indication of such difficulties anywhere in the record to justify a greater degree of restriction in this area. I note that her exams, in general, are negative for any excessive distractibility. Further, they have not revealed inadequate judgement or insight, or abnormal attention and concentration.

(R. 24.) Moreover, it is true, as plaintiff notes, that waxing and waning symptoms can still have an impact on daily functioning. But the ALJ found that was not true in this case, and plaintiff does not point to any record evidence that suggests otherwise. Likewise, plaintiff's assertion that "[i]t is inconceivable" that she can perform "even the simplest tasks, with even minimal interactions, five days per week, eight hours a day" (ECF 11 at 13), is meaningless without evidentiary support, which she does not provide. Finally, even if the ALJ's concentration, persistence, and pace assessment were wrong, plaintiff does not identify any restrictions she contends should have been added to the RFC to address her CPP limitations, which dooms her challenge to the RFC. *See Jozefyk*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

Additionally, plaintiff argues that the ALJ cherry-picked evidence to support a finding of no disability and ignored evidence that supports a contrary conclusion, including "overwhelming evidence of ongoing difficulties with upper extremity functioning." (ECF 11 at 14.) Plaintiff primarily cites evidence from before her October 26, 2022 surgery as support for this claim. (*See id.*) But the notes from plaintiff's November 7, 2022 post-surgery consultation state that: "Prior to surgery she had right arm and right leg numbness and tingling. Notes after surgery all her arm

---

[1] Plaintiff also says, incorrectly, that the record at R. 632 shows Alprazolam usage.

5

symptoms improved and she went home." (R. 1199.) Further, though the ALJ noted that plaintiff's cervical symptoms continued and she had another surgery in December 2023, he also noted that the report from the day of that operation said plaintiff had full range of motion in all extremities. (R. 2515.) In sum, the ALJ did not cherry-pick evidence to support a finding of no disability.

Plaintiff also argues that the ALJ failed to account for the limitation arising from plaintiff's fibromyalgia. With respect to this issue, the ALJ said:

> The record contains vague reference to fibromyalgia. However, I also note that, despite claimant's allegations, the record does not contain a definitive diagnosis of "fibromyalgia" and physical examinations have not revealed consistent findings to confirm the diagnosis. Giving claimant full benefit of doubt, in arriving at the above residual functional capacity, I have taken into consideration claimant's multiple pain complaints, as well as her reports of fibromyalgia in accordance with Social Security Ruling 12-2p. However, I note that, as required by the Ruling, while claimant has complained of multiple aches and pains, there is no consistent evidence of "widespread" pain, and there is no evidence of at least 11 positive tender points on physical examination to establish fibromyalgia as an existing impairment or, ultimately, one that would warrant any greater degree of restriction than that indicated in the above residual functional capacity assessment.

(R. 28.)

Plaintiff contends that "[t]he ALJ falsely asserted that the record does not contain a definitive diagnosis of fibromyalgia," as "the record contains repeated references to a history of a diagnosis of fibromyalgia." (ECF 11 at 15.) The record does indeed contain medical records that include fibromyalgia in plaintiff's past medical history and physical therapy notes that state, "1/28/21 Fibromyalgia tender points 11/18." (*See, e.g.*, R. 521, 532, 549, 602, 1042, 1087, 1174, 1219, 1269, 1474, 1480, 1642, 2391.) But, as the ALJ noted, plaintiff does not identify any records that document an examination for and diagnosis of fibromyalgia (R. 28), both of which are required to establish fibromyalgia as a medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869, at *2 (S.S.A July, 25, 2012). Absent such evidence, the ALJ did not err when he found that plaintiff had not established that Fibromyalgia was a medically determinable impairment.

Finally, plaintiff says the ALJ failed to account for the impact her morbid obesity has on her ability to work. With respect to obesity, the ALJ said:

> As to claimant's history of obesity, again, I note evidence in the record confirming clinical morbid obesity with a body mass index slightly in excess of 40.0 kg/m2 (Exhibits 10F; 25F); however, there is no indication in the limited clinical evidence that this causes significant interference in claimant's ability to perform basic work activities. Claimant's multiple consultative examinations did not note any deficits in gait, weight bearing, or balancing specifically related to obesity and there is no medical evidence of secondary effects or end organ damage specifically related to obesity to warrant any greater degree of restriction than that indicated in the above residual functional capacity. In fact, claimant has not alleged any specific limitations due to morbid obesity warranting any greater degree of limitation. In accordance with Social Security Ruling 19-2p, obesity has been considered at each step of the sequential evaluation but there is no medical evidence indicating that it, alone or in combination with other medically determinable impairments, result in a level of limitation that exceeds that indicated in the above residual functional capacity.

(R. 28.) In other words, the ALJ said plaintiff had not identified any limitations caused by her obesity that would warrant a more restrictive RFC and the medical evidence did not support any. That is not, as plaintiff argues, a boilerplate explanation that requires remand. (ECF 11 at 15.)

## Conclusion

For the reasons set forth above, the Court affirms the Commissioner's decision, denies plaintiff's motion for summary judgment [ECF 11], and terminates this case.

**SO ORDERED**                                    **ENTERED:  July 22, 2025**

**M. David Weisman**
**United States Magistrate Judge**